Let's call the last case. 090444 People Vs Hearing Abuse. 0904444 People Vs Hearing Abuse. May it please the Court. You're not on the briefs. The right to own and possess property is part of the foundation of the Anglo-American legal system. Indeed, the Fifth Amendment provides that no person shall be denied life, liberty, or property without due process of law. The State of Illinois has trampled on this fundamental right in the Forfeiture Statute by allowing the taking of a person's property under circumstances that do not warrant it. Ms. Petway, I apologize for interrupting you so early on. But I have an immediately presenting issue, and that is the case of, let me get the exact style of it. It's 1-2000-GMC. I'm sure you know about it. Why are we not constrained by that case? And why doesn't that case address most, if not maybe even all, of the issues presented by this manner? Well, the facts in this case are different from that one. In that case, Durham, the claimant, had not shown himself to have sufficient inclination and discipline to comply with the suspension of his driving privileges. Where in this case, Mr. Reese has. He had completed every requirement necessary in order to receive his driving privileges, and in fact was going to receive them the next month had he not been stopped. Additionally, it's clear that Mr. Reese drove to Mr. Richardson's job through Midlothian just to get back to the residence in Robbins, Mr. Richardson being his next-door neighbor. It was for a shorter period of time. Our argument in this instance is two-pronged. First, the court erred in granting judgment for the state because mitigating circumstances just existed to justify the remission of the vehicle back to Mr. Reese. And I want to stop you, and again, I'm hating to stop you early, but where is there a case that says the state has to consider mitigating factors? Well, Your Honor, it's correct, there is no case, and we hope for this to be such a case. Well, let me ask you, is that in our job duties and responsibilities, or shouldn't that be relegated to a higher reviewing court? Well, the court's duty is always to ensure that justice is done, and the statute only allows for the state's attorney to consider mitigating circumstances at a prior stage before filing a petition for the forfeiture. The forfeiture statute states that the vehicle used in the commission of any offense is subject to forfeiture. Forfeiture is not required. The statute affords the state's attorney with discretion to consider mitigating circumstances. However, the state failed to give any consideration to the mitigating circumstances presented by Mr. Reese, and thereby failed to properly exercise its discretionary duty. The court then had a duty to consider mitigating circumstances. Despite cursorily listing evidence presented by Mr. Reese, the court did not give meaningful consideration to the mitigating circumstances. Well, now, on our counsel, isn't it true that this court did, in fact, consider mitigating factors, even though it wasn't required to, and still concluded that this forfeiture was warranted? For instance, he said that your client did everything he was supposed to do. He had fulfilled George's requirement for reinstatement. He had fulfilled what the state of Illinois required for him to do. He had gone through inpatient and outpatient treatment. He kind of said everything that your client did, did do well, and said, and I'm still going to take the car. Your Honor is correct in citing the court's description. However, the statute didn't allow the court to do the type of consideration of these mitigating circumstances that we feel would be constitutionally required. Well, if the statute didn't allow it, why are you asking us for it? Annie, at least, didn't. We are bound to follow the statute. If the statute is constitutional, if the statute is considered to be unconstitutional, you would be doing justice to find it so. And somebody already said that this statute is constitutional. Yes, on due process grounds. We are arguing that the Eighth Amendment makes this unconstitutional, and that this particular taking is excessive and disproportionate, grossly disproportionate, to the offense. How do you distinguish the case where they took a $28,000 car for a guy who had the same charge of 6303? I can't remember the name of it now. That's the 2000 GMC. Oh, yeah, that's a much more expensive car. $28,000 car for the same 6303 allegation. In that situation, he was driving on a JEP outside of the hours when he should have been driving, and was actually drinking. Well, that wasn't the basis of the charge, though. That wasn't the basis of the forfeiture. The DUI was not the basis of the forfeiture. Only the 6303. Not the new arrest for DUI. In that instance, however, the claimant was drinking, and in this situation, Mr. Reese had been sober for over a year. He was not the type of motorist that the public would need to be protected from, according to the statute. This brings us back to those same mitigating circumstances. Mr. Reese had met the requirements necessary to get his license back in Illinois and in Georgia. He was not intoxicated at the time of the stop. He did not commit any actual driving violations. Counsel, nothing in the statute or the case law requires him to be intoxicated while driving. In order to be in violation, the issue is whether or not he's driving at all on a suspended DUI license. That is true. However, the statute does give discretion to the state, not to the court, to consider circumstances in which the car does not have to be forfeited. It's not a requirement that the car is forfeited. It's subject to forfeiture. And one of the things that the state failed to consider is these mitigating circumstances. I'm having a difficult time with your suggestion, with your contention that just because the statute invests in the state's attorney some sort of prosecutorial discretion, which it clearly does, I think, that the trial court is necessarily required to consider certain sets of circumstances in mitigation. How do you make that leap between arguing on the one hand that the state's attorney has prosecutorial discretion in the kinds of forfeitures that they will be commencing, as opposed to, or in contradistinction with, if you will, your suggestion that the trial court has non-discretionary duties in terms of consideration of certain mitigating factors? I've got a problem with that. Help me out. Well, our contention is that the court's duty is always to do justice. And if the statute removes that justice by the fact that the state's attorney is the one who has the discretion, a party that is not neutral and disinterested, the party, in fact, that is doing the taking in the first place, the court must step in and ensure that justice is done. And that reaches your constitutional issue? I believe it's related, yes. Which was raised as I read your briefs for the first time in your reply, is that correct? The concern regarding the court having discretion? I believe that was raised throughout, Your Honor. I'm sorry, the constitutional issue was raised for the first time, I believe, in your reply brief. The due process issue was, yes. However, we've continually stated the Eighth Amendment issue of excessive taking. Why don't you give us your excessive fines analysis? I'd like to hear that. The things that we should consider are the value of the vehicle, the nature of the item, which is, in this case, a car, and the car being a necessity of life, where Mr. Reese lives in Robbins, but is not able to go to work, to take his children to school, to go even to medical appointments, or even to buy groceries without this transportation. And then also the nature of this. I'm hating to interrupt you, but I meant with case law analysis of the excessive fines. How is it that the judge, if the judge doesn't consider the things that you're saying now, then they're somehow violating the Eighth Amendment, when there are factors that are set out for the excessive fines analysis that the court is required to look at? Well, the severity of the penalty is still to be considered. And the fact that this is trying to be a remedy for a specific public interest doesn't remove this from the ambit of the Eighth Amendment. And as I mentioned before, we do consider that Mr. Reese has shown sufficient inclination and discipline to comply with suspension of his driving privileges, and that this was through necessity. The law abhors forfeiture, and it is excessive taking without the analysis that the interest being taken from Mr. Reese is quite extreme. And in this situation, it was not doing justice. Let me just ask, assuming that we agree, necessarily, with your position, isn't that the, Doesn't that public policy decision-making fall to the General Assembly and not the Judiciary? I may not like it, you may not like it. But isn't this a decision, a final analysis that is left to the General Assembly? Where the General Assembly seeks a result that becomes absurd because of its application, there are no right to go, and there is a judgment system, and the court should step in and see to it that indeed the result is not absurd, but in fact justice is done. Counsel, how can it be absurd when it's in the public's great interest to deter and remove individuals who have a record of using alcohol and drugs on our highways, to deter them from, from utilizing the roadways? How is that an absurd result to keep a convicted drunk driver off the road? In this situation, this claimant, Mr. Reese, was not any longer a threat to the public. He was not a drunk driver, he had not been driving other than this necessity, but for this necessity, and he had fulfilled every requirement to be rehabilitated. So you're saying that because he, in this individual instance, that he had rehabilitated himself, that the General Assembly's policy of those who have been convicted, not allowing them to drive, that somehow that makes it ridiculous? And if he had rehabilitated himself so, then why had he not gotten his license restored, taken that next step? Yeah, why did he buy a car before he got his license restored? Why did he go and buy that? And drive, knowing that he had a revoked license. To begin with the most recent question, he... Answer mine, and then hers, and then mine. The result in this situation didn't serve the deterrent effect that it was meant to deter, because in this situation, he was to get his license back the next month. He was scheduled for a hearing to get his license in June of 2008. He was stopped on May 22nd of 2008, due to the stop that was pushed out until December of 08, and he did receive his license in June of 2008. He was merely waiting for the hearing. So he had done everything to get his license back, but he had to wait for that procedural step of the hearing. The same result would have obtained if he had been stopped the day before his hearing, correct? Correct. Correct. Correct. I'm sorry, could you repeat your question? I mean, this is a very interesting case, because your desire might be for someone to have that car, and it may seem like a harsh result, but we have to keep in mind, I think, what both judges on this case have said. There is a legislative desire, a strong legislative objective to keep alcohol-impaired drivers off the road. There is a threat to the safety of the public, and taking their cars certainly serves to deter them from doing that kind of thing. It's a public safety issue. And that's why I asked you earlier to address the excessiveness of it. When we have cases like the one where the $28,000 car was taken, where a father who wasn't driving the car, but his son was driving his car, because he knew his son didn't have a license, they took the car. Because it's the objective of keeping the alcohol-impaired driver off the road to deter people from allowing them to drive their cars. Allowing people to drive who don't have a driver's license when they've been suspended for having a DUI. Again, in this instance, Your Honor, Mr. Reese would not have been driving but for the emergency of his neighbor's mother. He received a call, as the transcripts show from the trial, that his longtime neighbor and friend... Oh, I'm sorry. Now I am interrupting. The judge made a credibility assessment on that. The judge didn't believe that. So, I mean, I understand that's what you're arguing, but the judge said, I don't believe that there was some emergency. And if you look at the logic of it, it's kind of strange if you've got an emergency, your mom's at home sick, that you call for somebody to come from someplace to come get you, to take you back, rather than taking a cab. And I think the testimony was that he got the call about 2 o'clock or something, or made the call about 2 o'clock, and at 310 they're still driving when there's this emergency. And so the judge made a credibility assessment on that issue, that your client wasn't credible. Yes, Your Honor, he did make that assessment. So it sounds like he was doing a bit of weighing here, to me, when you look at the facts of the case. He did point out all the good things he had done, but that he was basically saying he didn't believe that there was any necessity. It seems like he did exactly what you're asking him to do, even though he's not required to do. He perhaps mentioned these factors, knowing that he's not required to make this assessment, and used this in his opinion, but did not form the basis of his opinion by those mitigating circumstances. He mentioned them and, as you say, dismissed his testimony as not credible. However, he did have a witness who testified about the emergency, and that he trusted him to come to pick up his mother. The emergency was so important that they took another lady, too, to take her home. I just thought about that. There was another person, another employee at the same place. That's why the judge didn't think this was credible, because there was a female who hitched a ride in this emergency vehicle. And I think there was another person in there, too. Counsel, your time is just about spent. The Eighth Amendment provides that a fine is considered excessive if it's grossly disproportionate to the gravity of defendant's offense. And then our Supreme Court stated the various elements, which are factors which are not exhaustive, admittedly, in order to determine whether a forfeiture constitutes an excessive fine. In the case of People X Rail Waller versus 1989 Ford truck. So can you tell us why you believe that these factors constitute an excessive fine? Well, yes, Your Honor. In this case, the circumstances do not set up a situation that requires the forfeiture. It's inappropriate and disproportionate in this instance, because the necessity is such that it overcomes the circumstances. The burden. What he was doing with the vehicle was not something serious in the sense of intentionally seeking to commit harm to the public. He was seeking to help... Those factors, specifically the inherent gravity of the offense, whether the property was an integral part of the commission of the crime, and thirdly, whether the criminal activity involved in the property was extensive in terms of time or spatial use. That's what set out in Waller. Well, I will not argue against the second factor, whether the property was an integral part of the commission of the crime. But the third prong about the extent of the offense. In this situation, it was less than one hour that he was in his car. It was to go to a special school in Oak Forest, return through Midlothian back to Robbins. That was a short trip. They never discussed the mileage, but it was, in time, a short trip. So the extensiveness of the use was not for an extensive period of time. Then the gravity, which is one I'm most concerned about. Number one, if we balance the gravity of the taking with the offense, it's undeniably a severe penalty to take the car in order to prevent the presence of intoxicated motorists. In this situation, we do not have an intoxicated motorist. We still have someone who has been rehabilitated for over a year. Proof of which was shown to the court at all levels. Thank you, Counsel. A very, very brief rebuttal for you. Thank you. You will have a full 20 minutes, Counsel, if you need it. Thank you, Your Honor. May it please the Court, good afternoon. I am Assistant State's Attorney Alan Spellberg, representing the people of the State of Illinois. And at first, I would just like to apologize to this Court for the typographical errors that appear in our brief. As I was preparing for the oral argument and I was rereading the brief, I noticed several errors, and I apologize for presenting an unprofessional product to the Court. It was my responsibility, and I did not fulfill it. Having said that, Your Honor, though, getting to the merits of this case and getting first to Justice Paddy's point about the Fifth Amendment claim not being raised, that Fifth Amendment claim has actually never been raised until today. As you read the defendant's brief, you will find that the only constitutional claim which is raised, excuse me, claimant's brief, is an Eighth Amendment claim which appears in the second issue. The first issue is one simply of the court erred in finding forfeiture. In the reply brief, claimant has raised for the first time a due process claim. But nowhere in either brief is there ever any Fifth Amendment claim ever raised before this Court. And the reason why, of course, is that forfeiture statutes have long been recognized as being constitutional under the Fifth Amendment and the appropriate analysis. But that's not before this Court because it's never been here. We have not actually argued anything to that point because it doesn't appear in our brief. What this case does actually involve, though, is found actually on page 10 of the record in the middle of Officer Zofield's testimony where Officer Zofield testifies that after he pulled the defendant over for the tinted windows and the obstructed license plate and asked the defendant for his license and registration and insurance, the claimant handed him an envelope which included a letter from the Secretary of State's office informing him of the hearing before the Secretary of State on June 9th, about three weeks later, in which he might be able to obtain his license back after it had been revoked. And what the claimant said to Officer Zofield then is, give me a break. Please give me a break. That's exactly what the claimant is asking this Court to do. Well, Counsel, why shouldn't we give him a break? Why shouldn't the mitigation of the fact that he had spent this time and rehabilitated himself and was about to get his license reinstated? Why should not the Court, in doing justice, consider just that? Well, Your Honor, first of all, I would contest the assertion that the claimant has done everything he was required to do. One of the things he was required to do was not drive while his license was revoked. He was driving while his license was revoked. So clearly he was not fully rehabilitated, despite what his assertions might be. Now, yes, the State of Georgia apparently has determined that he satisfied all of their requirements. Yes, the inpatient drug and alcohol concerns were apparently satisfied. Yes, there were some other points that have been satisfied. But as a matter of law, he was not allowed to drive. And yes, he was not drunk while he was driving. Yes, of course, he was not drunk while he was driving in this scenario. And there's no evidence of any sort that he was drinking and driving at any point other than the prior conviction. But that's not the purpose of this law. The purpose of this law is to deter convicted drunk drivers from driving while their license has been suspended or revoked. It is to make sure that they do not get behind the wheel again at all until the privilege has been reinstated. And as the trial court properly recognized, as the law has long recognized, driving is a privilege. The ability to drive a car upon the public streets is not one that someone has a right to do. It's something that only has a privilege which is conferred upon satisfaction of all the legal requirements. Counsel, are you saying that in the event that, which say hypothetically that there was extreme emergency, a life and death situation, and someone with a revoked DUI license got behind the wheel, you know, in order to save another's life? According to you, should that be taken into consideration by the court or not? Of course, Your Honor. It should be taken into consideration. And the court did take... I thought your position was that there were no mitigating circumstances that should be taken into consideration. Your Honor, what is the bright line rule that we should be using to determine when mitigating circumstances should be taken into consideration and when they should not? Okay. Your Honor, just to clarify my point to make it clear. If there is a true necessity, of course, even someone who does not have a license is entitled to drive. That's been the law going back all the way through common law that necessity controls. In this case, the testimony related to necessity, which was not truly necessity because the trial court found it had not been properly pled or ever asserted. And when it was pointed out to claimant's counsel, the claimant said, well, we're not really making a necessity claim. But a true necessity would clearly counterband any other legal claims and the ability to seek forfeiture in this case. That would not be a crime in that scenario because necessity overrides the crime. But the fact that a court can consider necessity and the fact that the trial court here did actually consider the evidence purporting to be necessity doesn't mean that once the evidence has been established of the criminal conduct and the forfeiture being available as a matter of law, it doesn't mean that the mitigating circumstances are the only question that would have to be resolved. As the court noted, the trial court here did consider all the evidence, factored it in, and ultimately determined that the forfeiture was proper in this case because the defendant was driving while his license was revoked pursuant to a prior DUI. So he was committing a crime under 6303 and under the statute, forfeiture was proper. There's no other reason, no other basis to countermand that. There's no mitigating factors that weren't being considered. There's no evidence that wasn't offered that would demonstrate the trial court erred in any way. And the proper standard at this point is not even simply the preponderance of the evidence. It's against the manifest weight of the evidence. This court can only reverse the trial court's ruling if it were against the manifest weight of the evidence. Now certainly, the trial court can consider whatever mitigating evidence the claimant chooses to prove. Our statute actually provides for significant mitigating evidence for claimants who are innocent owners of the property. The claimant here was not an innocent owner. He was the person driving the car committing the crime at the time. So that type of mitigating evidence can't be offered in this scenario. But that evidence is always available in any particular scenario. So it demonstrates that the legislature has already determined that mitigating evidence can properly be brought before the court. And the court can reject the forfeiture in the appropriate circumstance. But this isn't the appropriate circumstance. Because as I stated, and this defendant has clearly always acknowledged he was driving without a license, while his license was revoked pursuant to a prior DUI. That's the basis of forfeiture. That's proper. I'd also just like to point out the record further reflects that this defendant was given an opportunity to try and resolve this case even before the forfeiture hearing went forward. At the argument on the defendant's motion to reconsider, it was pointed out that prior to the forfeiture proceedings being filed, the matter was tried to be resolved between the state's attorney and the claimant. And he chose not to because he did not believe that the state's attorney was adequately taking into account the mitigating factors. So we did consider them. We just didn't consider them significant. The trial court considered them. He didn't consider them significant. And now at this point he's asking this court to declare as a matter of law that he's entitled to a rule of lenity. That he's entitled to not have it be forfeited, even though the evidence has now been established and even though there's no basis in law for it. In regards to the Eighth Amendment claim, whether or not the forfeiture... I understand that the claimant's vehicle was worth $9,000. It's not $28,000, but it is $9,000. And $9,000 to him may very well be equivalent to $28,000 to the one $2,000 GMC. So the question is, then why is that not a grossly disproportionate charge in violation of the Eighth Amendment, a grossly disproportionate fine? Well, Your Honor, I understand your question. It's whether or not the forfeiture in this case would be excessive to this particular claimant, which sounds like it would be a subjective test under the Eighth Amendment. But the Eighth Amendment doesn't engage in a subjective analysis. It's an objective analysis. Well, the Eighth Amendment doesn't say anything about $28,000 either. No, no, it doesn't, but again... $6,000, or $3,000, or $2,000, or $5,000. But again, as you pointed out, the case People v. Waller v. 1998, establishes the test that should be engaged in for an Eighth Amendment excessive fine analysis in a forfeiture proceeding. And what that test goes to is it compares the gravity of the offense, not the ability of the claimant or the ability of the property owner to afford it. As this Court has recognized, the offense here is of extreme serious importance, because this involves an unlicensed driver, someone whose license was removed because he was driving drunk and was convicted of driving drunk, an unlicensed driver driving on the streets. It is a very dangerous scenario. Thankfully, nothing happened in this case. There's no indication to think that anyone was put in danger in this case. But as a general matter, the deterrence that's necessary for this crime is significant. Our legislature has properly determined that drunk drivers should not drive at all, that they have to rehabilitate themselves completely before they're entitled to have their driving privileges restored. That didn't happen here. So this is a significant, important part of the deterrence against drunk drivers driving again. The other factors of the test, looking to the property's role in the commission of the offense, as counsel acknowledged, the property here was the central basis of the commission of the offense. This offense could not have been committed but for that car being driven on the streets. And the third factor, which goes to whether the criminal activity involving the defendant's property was extensive in terms of time and or spatial use. Well, the evidence does only seem to indicate that it was for that one hour, that one day. But there are significant inferences beyond that which the trial court seemed to find. This claimant bought this car months before his driving privileges were restored. He received a phone call from his neighbor asking him to come drive him. And the evidence is that he was driving more than just that one time. There's clearly no evidence of it, but the inferences do support it. It was not an extensive reluctance, according to the testimony, to begin driving that day. Any claim of necessity was clearly rejected by the court, even though the court found that he didn't have to consider it, because there were other people driving in the car that day, riding in the car that day. Also, as Mr. Richardson stated, he was picked up at his school at 2 o'clock. It was only a 10-minute ride or a 15-minute ride to his mother's house. And yet they were found in Midlothian an hour and 10 minutes later. As the trial court noted, why were they still driving at that point? So it's not simply a short little quick trip for purposes of taking someone to see his sick mother. This appears to be a person who was driving extensively for at least an hour or an hour and a half at a time when he was not authorized to drive at all. I think the trial court also noted that there were three other licensed drivers in that car. So even if there were a necessity when he went to the place to pick him up, there were three other people who could be driving that car once he got to the location. Although I believe that the trial court may have been mistaken when he found three other drivers. I don't think it may be because one of them might have been a child. Could have been Mr. Richardson. And the strange nature of a co-worker who needs a ride to go with Mr. Richardson, even though his mother is there for an emergency, it sounds far too strange to be credible. And I believe that's why the trial court ruled the way he did. And for that reason, in this case, the forfeiture was proper. There is no constitutional claim regarding the Fifth Amendment before this Court. The due process claim, which is before this Court from the reply brief, again, was not proper to bring it in a reply brief. But even so, the case that we cited in an additional authority shows that that claim is without merit. The Eighth Amendment claim has been clearly rebutted by the case law that we've cited, in particular the 1-2000 GMC. And for that reason, we would ask this Court to affirm the trial court's ruling ordering the forfeiture. Thank you. Thank you, Counsel. Very, very brief rebuttal. Just to address one point that the State made in its argument, he suggested that the State tried to resolve this prior to the trial, prior to the forfeiture, but the claimant did not want to resolve it. That is nowhere in the record, and I would suggest that that cannot be argued at this point. Additionally, just to mention that the statute is to deter repeat offenders. In this instance, we have evidence that Mr. Reese is not a repeat offender. And the State also mentioned that there's always room for necessity, but here there was no true necessity. Necessity overrides the crime. In this situation, we are standing on the fact that there was a necessity that did override any crime in this situation, because of the fact that his neighbor, who did testify that he was not in a state to drive, and he would not have been one of the other drivers possible in this situation, that Mr. Reese was driving out of necessity. And the taking in this case was grossly disproportionate to the offense. Thank you.